UNITED STATE DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

```
UP STATE TOWER CO, LLC, and    )
BUFFALO-LAKE ERIE WIRELESS     )
SYSTEMS, CO., LLC,             )
                               )
     Plaintiffs,               )
                               )
     v.                        )    Case No. 1:17-cv-47
                               )
THE VILLAGE OF LAKEWOOD, NEW   )
YORK; THE VILLAGE BOARD OF     )
THE VILLAGE OF LAKEWOOD, NEW   )
YORK; and THE ZONING BOARD     )
OF APPEALS OF THE VILLAGE OF   )
LAKEWOOD, NEW YORK,            )
                               )
     Defendants.               )
```

**OPINION AND ORDER**

Plaintiffs Up State Tower Co., LLC and Buffalo-Lake Erie Wireless Systems, Co., LLC ("Plaintiffs") seek to place a wireless telecommunications tower within the Village of Lakewood, New York. On January 17, 2017, they filed the instant lawsuit claiming that the Village Board and the Village Zoning Board of Adjustment ("Village ZBA") had unreasonably delayed ruling on their application, and sought judicial review under the federal Telecommunication Act of 1996, 47 U.S.C. § 332(c)(7)(B)(v). Shortly after Plaintiffs filed suit, and after a series of public hearings, the Village ZBA issued an 11-page written decision (the "Reasoned Elaboration") denying their application for a use variance. Plaintiffs have since filed an Amended Complaint, challenging not only the delay but also the application denial.

Now before the Court is Defendants' motion to quash

subpoenas issued for the purpose of deposing three members of the Village Board and one member of the Village ZBA. Those four individuals have each publicly expressed support for Plaintiffs' application. Plaintiffs therefore submit that these witnesses are most likely to be forthcoming about

> the decision-making process, including whether or not there was a delay effort with respect to the application, whether or not there was a predetermined outcome with respect to the application, what evidence was and was not considered in denying the application, the acknowledgment of a [cell service] coverage gap that would be remedied by the proposed [tower] location, and the basis for certain statements made in the [written ZBA decision] that are not supported by any evidence in the record.

ECF No. 21 at 12.

The Village ZBA issued its Reasoned Elaboration after three public hearings and, according to Defendants, a review of over 1,000 pages of documents. The entire administrative record in this case is reported to be over 2,400 pages. When a party seeks judicial review of an administrative determination such as the ZBA's Reasoned Elaboration, a court must determine whether the ruling was supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iii) ("Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."). "In conducting substantial evidence review, a reviewing court normally considers only evidence contained in the

2

administrative record (*i.e.*, the evidence presented to the ZBA)." *Second Generation Properties, L.P. v. Town of Pelham*, 313 F.3d 620, 628 (1st Cir. 2002); *see also Omnipoint Commc'ns, Inc. v. Planning & Zoning Comm'n of Town of Guilford*, 156 F. Supp. 2d 212, 218 (D. Conn. 2001) ("Judicial review of agency action is generally limited to review of the full administrative record that was before the agency at the time it rendered its decision."). Correspondingly, the Second Circuit has noted that when conducting substantial evidence review, "we may neither engage in our own fact-finding nor supplant the Town Board's reasonable determinations*."* *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999).

Because the review of a town's decision is generally limited to the administrative record, deposition questioning about the deliberative process would be improper. That is particularly true in this case, where deliberations were reportedly held in public and made a part of the administrative record. The Court can review that record to determine, if necessary, whether substantial evidence supported the Village ZBA's decision.

A separate question, apart from the substantive bases for the Village ZBA's ruling, is the issue of delay. Delay was the initial impetus for the Complaint in this case, and Plaintiffs suggest that there was a concerted effort by Village officials to engage in delay as a means of effectively denying their

application.  The Court notes that the ultimate decision-makers in this matter were the Village ZBA members who voted down the application, and that only the dissenting member has been subpoenaed.  Nonetheless, Plaintiffs submit that the dissenting voter, together with three members of the Village Board, may have information about the actions and motives underlying the alleged delay.

In support of the motion to quash, counsel for Defendants has set forth a detailed time-line, all of which appears to have been culled from the public record, depicting the procedural path of Plaintiffs' application.  Briefly stated, Plaintiffs first submitted an application on or about April 12, 2016 without paying the application fee, and the application was returned to them.  Plaintiffs re-submitted their application with a partial application fee on or about June 11, 2016, and on July 11, 2016 were advised of the application's deficiencies.  Plaintiffs dispute whether the application was, in fact, deficient.

On September 7, 2016, despite what Defendants claim was only a partial payment of the application fee and Plaintiffs' alleged refusals to comply with other application requirements, the Village Board deemed the application complete and agreed to proceed.  On October 20, 2016, noting a disagreement as to when the federal "shot clock" for ruling on the application should have commenced, the parties agreed to a 60-day extension of that

"shot clock." On February 9, 2017, after a third public hearing on the matter, the Village ZBA closed the hearing and publicly reviewed the application on the record. The Village ZBA issued its written decision on February 23, 2016, which Defendants contend was within the "shot clock" period when the 60-day extension is taken into account. Plaintiffs did not appeal the denial of the variance in state court.

Plaintiffs claim that, throughout this process, there was a concerted effort by certain Village officials to delay and obstruct the application. That effort reportedly included the passage of special laws applicable only to wireless telecommunications applicants, as well as needless requests for additional fees and information. Plaintiffs also contest the legality of the Village Board's transfer of authority for environmental review to the Village ZBA (which Defendants contend was the result of a settlement agreement arising out of a parallel state action). Like the rest of the permitting process, these events appear to be memorialized in meeting minutes, transcripts, correspondence between the parties, and/or other readily-available documentation.

Plaintiffs argue that with respect to delay, it is "somewhat obvious" that additional discovery is permissible "given that the standard is one of reasonableness." ECF No. 21 at 18. Their case citations, however, do not support this point. In *Upstate*

5

*Cellular Network v. City of Auburn*, 257 F. Supp. 3d 309 (N.D.N.Y. 2017), there is no reference to testimony from city officials as to the reasons underlying the delay. Moreover, the court was able to determine reasonableness by reviewing the public record and communications between the parties leading up to the lawsuit. *Id.* at 315-16. Similarly, *Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit*, 848 F. Supp. 2d 391, 403 (W.D.N.Y. 2012) gives no indication that town officials were asked in depositions about the motives underlying their actions.

Plaintiffs also allege that they are entitled to discovery when they have made a showing of bad faith. ECF No. 21 at 19. However, their allegations of bad faith are largely speculative. Plaintiffs describe their bad faith claim as based upon "serious questions about the motives surrounding the delays in processing the 2016 Application and abrupt change in lead agency designations from the Village Board to the ZBA." *Id.* at 20. For support, they cite a newspaper editorial written by the three subpoenaed Village Board members, in which it is alleged that certain Village officials and Village counsel conferred during meetings and conference calls, without notice to the Board. The writers of the editorial were not present during those meeting and calls, and do not purport to know what was said.

The Village's reasons for the alleged delay are largely set forth in the administrative record and related materials, and

6

Plaintiffs' speculation about underlying motives does not provide a basis for issuing subpoenas to Village officials.  *See, e.g., Cleveland-Goins v. City of New York*, 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").  Defendants' motion to quash is therefore **granted**.  Pretrial dispositive motions shall be filed within 60 days of this Opinion and Order.

DATED at Burlington, in the District of Vermont, this 19th day of March, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge